# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARLYN TROUT** and **JORDIN TROUT**, | : : : : : : : : : : : : | **CIVIL ACTION NO. 1:10-CV-0439**<br><br>**(Judge Conner)** |
| **Plaintiffs** | | |
| v. | | |
| **WILLIAM WENTZ, KAREN COMERY, OFFICER HIVNER,** and **OFFICER HOWER**, | | |
| **Defendants** | | |

## MEMORANDUM

Plaintiffs Marlyn and Jordin Trout ("the Trouts") bring the above-captioned case pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Presently before the court are two motions to dismiss all claims. Defendant Karen Comery ("Comery"), an Assistant District Attorney for York County, filed the first motion to dismiss (Doc. 12). The second motion to dismiss (Doc. 21) was filed by officers William Wentz, Kim Hivner, and Kyle Hower (collectively, "the York City defendants").[1] For the reasons that follow, the motions will be granted.

---

[1] The motion filed by the York City defendants also requests that the Trouts and/or their counsel be required to pay the defendants' fees and costs. The court concludes that such sanctions are unwarranted, and this portion of the motion will be denied without further discussion.

## I. Factual Background[2] and Procedural History

This case arises out of an incident that occurred in York County, Pennsylvania, in the late evening of October 20, 2007. The complaint alleges that, on the evening in question, the Trouts purchased a meal from a Long John Silver's restaurant and then went to a nearby shopping center parking lot to eat. (Doc. 1 ¶ 15). Although only one of the shopping center's stores, an adult video store, was open at the time, (id.), more than 200 people were gathered in the parking lot, (see id. ¶¶ 12, 17). The Trouts acknowledge that these gatherings occurred regularly, "on Friday and Saturday nights," and that "[a]ccording to police . . . automobiles would unlawfully race[,]" but the Trouts deny having any knowledge or playing any role in "organized racing" or in "any organizing of these purported gatherings." (Id. ¶ 12). According to the Trouts, the crowd was gathered to look at cars. (Id. ¶¶ 12-13).

The York City Police entered the parking lot at 11:03 p.m. (Id. ¶ 16). They ordered "over 200 people" to exit their vehicles and walk to group sites. (Id. ¶ 17). The police separated adults and minors, (id.); hence, Jordin Trout ("Jordin"), who was sixteen (16) years old at the time, was separated from Marlyn Trout ("Marlyn").

---

[2] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See *infra* Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); Santiago v. Warminster Twp., No. 10-1294, --- F.3d ---, 2010 WL 5071779 at *4 (3d Cir. 2010).

(Id. ¶ 18).  Jordin and Marlyn, "along with hundreds like them," (id. at 1) were handcuffed, searched, transported in police vehicles to a "booking station" or a "holding center," and issued pre-prepared citations, which charged them with defiant trespass.  (Id. at 1, 4-6, ¶¶ 19, 21-23).

The Trouts aver that the events described above were planned in advance by defendant Wentz, a York City Police Officer, and defendant Comery, an Assistant District Attorney for York County.  (Id. at ¶¶ 11, 20).  They claim that the parking lot was "set up by placing signs in the lot[,]" which "would be used as an excuse to charge spectators with defiant trespass where 'notice against trespassing is given by signs posted[.]'"  (Id. at ¶ 14).

The Trouts filed the instant case pursuant to 42 U.S.C. § 1983, and they allege that defendants violated their First, Fourth, and Fourteenth Amendment rights.  Specifically, the Trouts complain that they were "unlawfully arrested, seized, and searched," (id. at 1; see also id. ¶¶ 26, 31, 35-36, 39-40, 43-44), maliciously prosecuted,[3] (id. ¶ 26, 40, 44), and that their rights to free association and due process of law were infringed, (id. ¶¶ 7-8, 34, 37).  Presently before the court are two motions to dismiss, one filed by Comery, (Doc. 12), and the other filed jointly by the York City defendants, (Doc. 21).  The motions have been fully briefed and are now ripe for disposition.

---

[3] The complaint contains allegations of malicious prosecution, but there is no indication that the Trouts intend to bring a separate count under state tort law for malicious prosecution.  Rather, it appears that these allegations are intended to support their Fourth Amendment claims (Counts I and II).  (See generally Doc. 1).

3

## II.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., No. 10-1294, --- F.3d ---, 2010 WL 5071779 at *4 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id.

4

(quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)) Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

The Trouts bring the pending lawsuit pursuant to § 1983 of Title 42 of the United States Code, which offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."[4] Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendant Comery has moved to dismiss all claims against her on the basis of prosecutorial immunity, or in the alternative, on the basis that they are barred by the applicable statute of limitations. Similarly, the York City defendants argue that the Trouts' claims are time-barred, that the Trouts fail to state claims upon which relief can be granted, and that the defendants are entitled to qualified immunity. The York City defendants also seek to recover the attorneys fees and costs incurred in defending the instant case. The court will address these claims *seriatim*.

   A.   **Statute of Limitations**

In the context of a motion to dismiss under Rule 12(b)(6), a statute of limitations defense *must be apparent on the face of the pleading.* See Benak v.

---

[4] Defendants apparently concede for purposes of the instant motion that they were acting under color of state law at all times relevant hereto.

Alliance Capital Mgmt., 435 F.3d 396, 400 n.14 (3d Cir. 2006); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). The defense is apparent on the face of the complaint if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Pennsylvania's two-year statute of limitations for personal injury actions governs § 1983 claims brought in federal court in Pennsylvania. See 42 PA. CONS. STAT. § 5524; see also Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) ("In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury."). In the instant case, it is clear on the face of the complaint that the allegedly unlawful arrest occurred on October 20, 2007. The complaint was filed on February 26, 2010. Hence, defendants argue that the Trouts' claims are time-barred.

The Trouts argue that "[u]nder the holding of Heck v. Humphrey, . . . 512 U.S. 477 (1994), [their] cause of action could not have accrued until their prosecution was terminated in their favor (at the earliest), on May 28, 2008[.]" (Doc

16 at 9; see also Doc. 23 at 6-7).[5]  The court must therefore determine when the Trouts' cause of action accrued.  This determination is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").

Insofar as the Trouts' claims stem from allegations of unlawful arrest, their reliance on Heck v. Humphrey is misplaced.  A cause of action for unlawful arrest, which is a type of false imprisonment, is governed by the holding of Wallace v. Kato, 543 U.S. at 387-92.  The Wallace Court held that the limitations period begins to run against a false imprisonment claim as soon as the victim is being held pursuant to some legal process—"when, for example, he is bound over by a magistrate or arraigned on charges." 543 U.S. at 389.  Significantly, the Wallace Court specifically rejected the contention raised by the Trouts in the instant matter, i.e. that Heck compels a different result.  Id. at 392.  In the instant case, it is clear from the face of the complaint that more than two years elapsed between the initiation of legal

---

[5] The Supreme Court summarized its holding in Heck as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87.

8

process against the Trouts and their filing of the pending claims. (See Doc. 1 ¶ 24 ("On January 28, 2008, the plaintiffs were prosecuted before D.J. Richard Martin.")). Therefore, the Trouts' unlawful arrest claims are time-barred, and Heck does not dictate otherwise. These claims must be dismissed, and leave to amend will be denied as futile.

Heck is equally inapplicable in determining the accrual dates of the Trouts' First and Fourteenth Amendment causes of action. The Heck Court specifically limited its holding to claims for damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid[.]"[6] 512 U.S. at 486. Thus, the holding of

---

[6] To explain the "other harm" clause, the Heck Court provided an example of "a § 1983 action . . . whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful[.]" Id. at 487 n.6. The plaintiff in the Court's example was an individual convicted for "the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest." Id. (emphasis in the original). If this hypothetical plaintiff then brought an action for damages under § 1983, alleging that the arresting officer violated his Fourth Amendment rights, then his success would depend on "negat[ing] an element of the offense of which [the plaintiff] has been convicted." Id. The holding of Heck would therefore apply to his § 1983 action, and the action would not lie unless his conviction had already been invalidated. The instant case can be easily distinguished from the Heck Court's example, because the Trouts were convicted for defiant trespass, not for a crime in which lawful arrest is an element.

9

Heck has no bearing in the instant case, where the alleged unlawfulness of the defendants' actions would not render the Trouts' conviction or sentence invalid.[7]

The untimeliness of the Trouts' First and Fourteenth Amendment claims is apparent on the face of the complaint. As a general rule, a claim will accrue "when the plaintiff has 'a complete and present cause of action[,]'" which is "when 'the plaintiff can file suit and obtain relief[.]'" Wallace, 549 U.S. at 388 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 201 (1997)). The court finds no basis to conclude that the Trouts were unable to obtain relief on their First and Fourteenth Amendment causes of action, or that the claims were otherwise incomplete, immediately after the alleged violations occurred on October 20, 2007. These claims are therefore untimely.

Finally, the court turns to the Trouts' Fourth Amendment malicious prosecution claims. (See Doc. 1 ¶ 26, 40, 44). Neither defendant Comery nor the

---

[7] Not all of the allegations of unlawful conduct are articulated with precision in the complaint. The complaint contains *some* clear allegations that specific conduct violated the Trouts' rights: e.g., "By questioning the minor Jordin in violation of Pennsylvania law the defendants violated plaintiffs' substantive due process rights." (Doc. 1 ¶ 14). In more instances, however, the complaint uses vague references to unlawful actions which are not precisely identified: e.g., "Plaintiffs also have a 1st Amendment right to associate and gather for lawful purposes which was violated by these defendants." (Id. ¶ 37). Thus, it is difficult to determine which of the Trouts' factual allegations are intended to support their First and Fourteenth Amendment claims, rather than their Fourth Amendment claims. After a careful reading of the complaint, the court concludes that the Trouts' First and Fourteenth Amendment claims do not directly challenge their convictions, such that Heck would apply.

York City defendants have persuaded the court that such claims are time-barred.[8]
The court therefore declines to dismiss these claims on the basis of untimeliness,
and it will turn to defendants' remaining arguments for dismissal.

### B.   Prosecutorial Immunity

Defendant Comery contends that she enjoys prosecutorial immunity against
the Trouts' claims. Prosecutors receive absolute immunity for acts "integral to the
judicial process," including those performed while initiating and prosecuting a
criminal case, and while presenting the state's case in a judicial proceeding.
Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006); see also Imbler v. Pachtman,
424 U.S. 409, 430-31 (1976); Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir.
2006); Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001). The availability of immunity
is not determined by the *identity or office* of the individual asserting immunity;
rather, it depends on the *function* served by the act for which immunity is sought.
Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993); Williams, 453 F.3d at 178

---

[8] Indeed, defendants make no attempt to assert that the applicable statute of limitations bars malicious prosecution claims. The York City defendants recognize the Trouts' complaints of malicious prosecution, and they explicitly exempt this claim from their statute of limitations argument. (Doc. 22 at 4; 24 at 1 ("[W]ith the exception of the malicious prosecution claim, Mr. Trout's First, Fourth, and Fourteenth Amendment claims are barred by the applicable statute of limitations.")). Comery does not acknowledge malicious prosecution as a component of the Trouts' claims; rather, she takes the position that "[w]hile the individual Counts of the Complaint are not well articulated, it appears that the Trouts are claiming that they were wrongfully arrested." (Doc. 13 at 4). The court is not convinced that the Trouts' claims are so limited. The court finds that the complaint raises Fourth Amendment malicious prosecution claims under § 1983, and none of the defendants have moved to dismiss such claims as untimely.

11

(observing that courts apply absolute prosecutorial immunity using a functional approach that focuses on the purpose served by the acts implicated by the claim). Actions performed in the prosecutor's role as advocate receive absolute prosecutorial immunity, as do acts performed in preparation "for the initiation of judicial proceedings or for trial." Buckley, 509 U.S. at 273; see also Hughes, 242 F.3d at 125 (observing that immunity covers actions such as "initiating and pursuing a criminal prosecution and presenting the state's case in court").

Comery asserts that all of her actions that are the subject of this litigation "involved the initiation and prosecution of a defiant trespass charge[,]" and that she is immune from liability for such actions. (Doc. 13 at 2-3). The Trouts argue that "[d]efendant Comery clearly acted in a non-judicial capacity and as a member of the investigating law enforcement team[,] for which there is no immunity." (Doc. 16 at 8). More specifically, they allege that she "participated in the planning of the event" and "instructed the police on what to do and what actions to take." (Id.) In response, Comery makes a distinction between the acts that she allegedly performed on or before October 20, 2007, and her subsequent actions, in prosecuting the criminal case. She argues that the actions in the former category are beyond the statute of limitations, while the actions in the latter category are covered by prosecutorial immunity. The court agrees. As the court explained *supra*, Part III.A, most of the Trouts' claims are untimely. Comrey's motion to dismiss did not acknowledge that the Trouts raised Fourth Amendment malicious prosecution claims—and thus, Comrey did not explicitly seek dismissal of such

12

claims on the basis of timeliness[9]—but such claims must nevertheless be dismissed, because Comrey is immune from liability for all of her conduct in the actual prosecution of criminal charges. The Trouts' malicious prosecution claim against Comrey will therefore be dismissed, and leave to amend will be denied as futile.

### C. **Qualified Immunity**

The York City defendants also argue that they are immune from suit, under the doctrine of qualified immunity. Qualified immunity provides not merely a "defense to liability," but rather, "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It is therefore important to "resolv[e] immunity questions at the earliest possible stage in the litigation." Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. 808, 815 (2009) (quoting Hunter, 502 U.S. at 227). Certain officials, including police officers and other state actors performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Wilson v. Layne, 526 U.S. 603, 609 (1999). If such an official reasonably believes his conduct to be lawful, he is protected by qualified immunity, which affords "ample room for mistaken judgments by protecting all but the plainly incompetent or those who

---

[9] See *supra* note 8 and accompanying text.

13

knowingly violate the law." Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3d Cir. 2010) (quoting Hunter, 502 U.S. at 229).

Application of qualified immunity implicates two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the plaintiff fails to allege that the defendant committed a constitutional infraction, then the court must dispose of the claim in the defendant's favor. Saucier, 533 U.S. at 201; see also Wilson, 526 U.S. at 609. However, if the allegations show that the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. 201-02. A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. Pearson, 129 S. Ct. at 815-16; Williams, 455 F.3d at 191. Hence, a defendant may not invoke qualified immunity if the defendant's conduct diverges from that of a reasonable state actor under the circumstances. Williams, 455 F.3d at 191.

The court is not required to conduct these inquiries sequentially. Pearson, 129 S. Ct. at 820. The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were *clearly established* at the time the defendant acted. Id. Proceeding

14

under the above principles, the court will exercise its discretion to forego consideration of whether the Trouts' allegations make out viable malicious prosecution claims,[10] until it has first examined whether defendants enjoy qualified immunity.

To determine whether a public official is entitled to qualified immunity, the court must ascertain "whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant, 98 F.3d at 121 (citing Anderson v. Creighton, 483 U.S. 635, 636-37 (1987)). The Supreme Court has warned against conceptualizing an individual's rights at too distant a "level of generality," and it has held that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 639-40. The court must examine whether the defendant should have known that his or her actions contravened statutory or constitutional guarantees. Gruenke, 225 F.3d at 299-300. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (citation omitted). In the instant case, the factual allegations of the complaint do not support a finding that the unlawfulness of the officers' conduct was apparent.

---

[10] As the court has explained *supra*, Part III.A, the Trouts's other claims are time-barred.

The Trouts admit that they were in the shopping center parking lot, where signs prohibiting trespassing were posted, and that their purpose for being there was not to patronize the shopping center stores, most of which were closed at the time. (Doc. 1 ¶¶ 14-15). However, the Trouts deny having any role in organized racing of automobiles or any knowledge about the organizing of any gatherings at the shopping center,(id. ¶ 12), and indeed, they deny violating any law or violating the provisions of any sign posted in the parking lot, (id. ¶ 14). They allege that they were engaging in lawful activities (e.g., eating a meal and watching cars), (id. ¶¶ 48-50), and that the police set up the "detail" in order to "create a crime[,]" (id. ¶¶ 11, 51). Although the court credits all of these factual allegations at this juncture, it is still apparent that the Trouts were amongst a crowd of people committing the crime of defiant trespass, simply by being present in the shopping center parking lot. No reasonable interpretation of the Trouts' allegations permits the court to find that a reasonable police officer would have understood that their rights would be violated if he arrested them for defiant trespass, along with the rest of the crowd.

Significantly, the Trouts also allege that "the police force participants were instructed on what to do and what actions to take by Wentz who was advised by Comery." (Doc. 1 ¶ 20). Although an officer's reliance upon legal advice does not necessarily cloak his conduct with qualified immunity, see Kelly, 622 F.3d at 254-56, the court finds that, under the circumstances of this case, the alleged reliance on legal advice suggests that a reasonable officer in these circumstances would have

16

believed his conduct to be lawful.[11] For all of these reasons, the York City defendants enjoy qualified immunity. It is therefore unnecessary for the court to address the merits of the Trouts' claims. The claims must be dismissed because the defendants are immune from suit.

## IV. Conclusion

The claims against all defendants of unlawful arrest, First Amendment violations, and Fourteenth Amendment violations will be dismissed as untimely. The Fourth Amendment malicious prosecution claim against Comery will also be dismissed, on the basis of prosecutorial immunity. The Trouts' Fourth Amendment malicious prosecution claims against the York City defendants will be dismissed on the basis of qualified immunity.

The court will grant the Trouts thirty (30) days in which they may seek leave to file an amended complaint.[12] If the Trouts demonstrate the validity of the claims in light of the proposed amendments, leave to amend shall be granted. Absent such a filing, the above-captioned case will be dismissed.

---

[11] This conclusion is consistent with the Third Circuit's holding in Kelly that "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." Id. at 255-56. Of course, Kelly does not compel the court's conclusion on this issue, but the court finds the Kelly court's reasoning to be instructive.

[12] However, leave to amend will be denied as futile with respect to the Trouts' unlawful arrest claims against all defendants, and with respect to their Fourth Amendment malicious prosecution claim against defendant Comery.

17

An appropriate order follows.

                                               S/ Christopher C. Conner
                                               CHRISTOPHER C. CONNER
                                               United States District Judge

Dated:        January 12, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARLYN TROUT and JORDIN TROUT,** : | CIVIL ACTION NO. 1:10-CV-0439 |
| : | |
| : | **(Judge Conner)** |
| **Plaintiffs** : | |
| : | |
| v. : | |
| : | |
| **WILLIAM WENTZ, KAREN COMERY, OFFICER HIVNER, and OFFICER HOWER,** : | |
| : | |
| **Defendants** : | |

## **ORDER**

AND NOW, this 12th day of January, 2011, upon consideration of the motion to dismiss (Doc. 12) filed by defendant Karen Comery ("Comery"), and upon further consideration of the motion to dismiss (Doc. 21) filed by defendants William Wentz, Kim Hivner, and Kyle Hower (collectively, "the York City defendants"), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Comery's motion to dismiss (Doc. 12) is GRANTED.

2. The York City defendants' motion to dismiss (Doc. 21) is GRANTED.

3. All claims against defendants are DISMISSED.

4. The Trouts shall be permitted to file, within thirty (30) days of the date of this order, a motion for leave to amend and a brief in support thereof. Any such motion shall include the proposed amendments. The brief in support shall include citations to applicable and controlling law demonstrating the validity of the remaining claims in light of the proposed amendments. Absent such a filing, this case will be closed.

5. The Clerk of Court is directed to defer closing the above-captioned case.

6. In the event that the court grants a motion for leave to amend filed by the Trouts, a revised pretrial and trial schedule will be issued by future order of court.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge